561 A.2d 25

**COMMONWEALTH of Pennsylvania**

v.

**Albino C. ROZPLOCHI, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1988.

Filed June 26, 1989.

358

Thomas A. Dreyer, Media, for appellant.

Ann A. Osborne, Assistant District Attorney, Media, for the Com., appellee.

Before OLSZEWSKI, BECK and JOHNSON, JJ.

BECK, Judge:

The principal issue presented by this case is whether a defendant commits one robbery or two if he threatens to kill two employees of a business establishment during the course of a single theft from the business establishment. We find that under these circumstances, a defendant may be punished for two independent violations of the robbery statute.

This is an appeal by Albino Rozplochi from a judgment of sentence consisting of consecutive terms of imprisonment for two counts of robbery [1] and a further consecutive term of imprisonment for the offense of former convict not to own firearm. [2] Appellant contends that his trial counsel was ineffective for failing to challenge the sufficiency of the evidence of one of the counts of robbery, for failing to

1.  18 Pa.Cons.Stat.Ann. § 3701 (Purdon 1983).
2.  18 Pa.Cons.Stat.Ann. § 6105 (Purdon 1983).

challenge the sufficiency of the evidence of the firearm offense, and for failing to request a cautionary instruction regarding identification testimony. Appellant also contends that the trial court erred by refusing to suppress identification testimony. After careful consideration, we affirm the judgment of sentence.

The relevant facts are accurately summarized in the opinion of the trial court.

On September 18, 1985, at approximately 8:45 A.M. Barbara Cavaliere and Elizabeth DeJesse, manager and employee, respectively, of the Financial Exchange Company, were inside [the] company office preparing to open for the day's business. The company is located at 1130 Chester Pike, Sharon Hill, Pennsylvania, and is situated inside of an ACME food store at that address. While preparing to open, Ms. Cavaliere heard a knock on the office door and proceeded to look out of a window located near the door to determine the identify of the person seeking entry. She saw the Defendant standing outside the door and inquired as to how she might help him. Defendant answered that he had a package from her superior, "Bobby Louisa", and held up a picture identification card and a manila envelope which resembled the envelopes she received daily from the Department of Public Welfare. Ms. Cavaliere, again asked the Defendant to state his business and he replied that he was "on-route" and was in a hurry. Ms. Cavaliere started to admit the Defendant but asked for a closer inspection of his identity card. However, when she opened the door, she saw that Defendant had pulled a revolver from the manila envelope and, upon seeing this, both she and Ms. DeJesse attempted to push the door closed in order to keep the Defendant out. Unfortunately, they were forced to relent in their efforts when Defendant, while brandishing the gun, threatened to "blow them away".

Once in the office, Defendant pushed Ms. DeJesse against a wall in front of the company safe and pushed Ms. Cavaliere up to the safe. At gunpoint, Ms. Cavaliere

emptied the safe of approximately $22,000.00 in cash and food stamps which Defendant stuffed into the manila envelope. When the envelope could hold no more, Defendant grabbed a company money bag and began filling it.

At some point there was a knock at the door. In response, Defendant cocked the gun, held it to the back of Ms. Cavaliere's head and demanded that she hurry stating "if I don't get out of here ... you aren't either". Ms. Cavaliere noted that the gun was loaded and, indeed she was so close to it that she could see the bullets inside. Moments later, Defendant left the store with the money and food stamps. The entire incident took approximately ten minutes during which time the Defendant was in full view of his victims for almost the entire time.

Trial Court Op. at 1–2 (citations to record omitted). We further note that in her trial testimony, Ms. DeJesse specified that appellant pointed his gun at her and directed his threats at her as well as at Ms. Cavaliere.

Appellant was apprehended and charged with numerous offenses including one count of robbery based upon his conduct toward Ms. Cavaliere and one count of robbery based upon his conduct toward Ms. DeJesse. On April 22, 1986, following a jury trial, he was found guilty of both counts of robbery, as well as of theft by unlawful taking, theft by receiving stolen property, possession of an instrument of crime, simple assault, recklessly endangering another person, and terroristic threats. On July 14, 1986, following a separate bench trial, appellant was convicted of former convict not to own firearm. He was sentenced on July 2, 1987 to consecutive sentences of ten to twenty years for the first robbery count, ten to twenty years for the second robbery count, and one to five years for former convict not to own firearm. The court found that the remaining crimes had merged with the robbery convictions.

Appellant filed a timely notice of appeal from his judgment of sentence. He obtained new counsel for the appeal, and now asserts that his trial counsel provided ineffective representation.

There are three elements to a valid claim of ineffective assistance. We inquire first whether the underlying claim is of arguable merit; that is, whether the disputed action or omission by counsel was of questionable legal soundness. If so, we ask whether counsel had any reasonable basis for the questionable action or omission which was designed to effectuate his client's interest. If he did, our inquiry ends. If not, the appellant will be granted relief if he also demonstrates that counsel's improper course of conduct worked to his prejudice, i.e. had an adverse effect on the outcome of the proceedings.

*Commonwealth v. Davis,* 518 Pa. 77, 83–84, 541 A.2d 315, 318 (1988). *See also Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Petras,* 368 Pa.Super. 372, 534 A.2d 483 (1987). Applying this standard, we find that appellant's allegations of ineffectiveness are without merit.

## I.

Appellant first argues that his trial counsel should have challenged the sufficiency of the evidence as to one of the counts of robbery. He emphasizes that the assets which he stole belonged exclusively to the Financial Exchange and that he did not at any time attempt to confiscate the private property of either Ms. Cavaliere or Ms. DeJesse. He further notes that although he threatened both employees, only Ms. Cavaliere was compelled to hand him cash belonging to the Financial Exchange. He therefore reasons that only one robbery took place and that the victim of that robbery was the Financial Exchange, rather than either of the women he held at gunpoint.

■ Whether a defendant commits multiple robberies if he threatens two people while attempting to steal the property of their common employer is a question of first impression for the appellate courts of Pennsylvania. *See Commonwealth v. Dooley,* 332 Pa.Super. 227, 231 n. 3, 481 A.2d

336, 338 n. 3 (1984) (declining to reach issue).[3] To answer this question, we must examine the section of the Pennsylvania Crimes Code which defines the offense of robbery. That section provides in relevant part:

(1) A person is guilty of robbery, if, in the course of committing a theft, he:

. . . .

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

. . . .

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.Cons.Stat.Ann. § 3701.

During the course of committing a theft from the Financial Exchange, appellant threatened Ms. Cavaliere with immediate serious bodily injury. This was sufficient to constitute robbery. During the course of committing a theft from the Financial Exchange, appellant also threatened Ms. DeJesse with immediate serious bodily injury. This was also sufficient to constitute robbery. Thus, the text of the statute indicates that appellant committed two robberies when he threatened two individuals during the course of a single theft.

This reading of the statute is in accord with the Pennsylvania Supreme Court's interpretation of another section of the Crimes Code in *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984).[4] In *Frisbie*, the defendant was con-

---

**3.** *Commonwealth v. Gray*, 339 Pa.Super. 385, 489 A.2d 213 (1985) and *Commonwealth v. Bryant*, 282 Pa.Super. 600, 423 A.2d 407 (1980) concern similar issues but neither is directly on point. In *Gray*, we held that a defendant may be convicted of two robberies if he forces both a bartender and a customer of the bar to hand over property during the same holdup. In *Bryant*, we held that a defendant may be convicted of five robberies if he terrorizes five individuals while attempting to steal property belonging to each of them but succeeds only in stealing property which belonged to four of them.

**4.** Justice Papadakos has expressed the view that *Commonwealth v. Frisbie* may have been implicitly overruled by the Pennsylvania Supreme Court's decision in *Commonwealth v. Weakland*, 521 Pa. 353,

victed of nine counts of recklessly endangering another person after driving his car through a busy intersection and injuring nine pedestrians. In upholding the convictions, the Court employed the following analysis.

The Crimes Code defines the crime of "recklessly endangering another person" as follows:

§ 2705 Recklessly endangering another person

A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place *another person* in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705 (emphasis added). Construing this language "according to the fair import of [its] terms," we conclude that § 2705 was written with regard to an *individual person* being placed in danger of death or serious bodily injury, and that a separate offense is committed for each individual person placed in such danger.

Where the legislature has intended to preclude multiple punishments for multiple injuries resulting from a single act, it has expressly done so. *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976). For example, in § 2707 of the Crimes Code, the legislature made it a crime to "throw ... a rock, stone, brick ... or any deadly or dangerous missile ... into a vehicle ... that is occupied by *one or more persons*...." 18 Pa.C.S.A. § 2707 (emphasis added). Similarly, § 2710 of the Crimes Code makes it a crime to commit an offense under any other provision of Article B (offenses involving danger of the person) "with malicious intention toward the race, color, religion, or national origin *of another individual or group of individuals*." 18 Pa.C.S.A. § 2710 (emphasis added). Had the legislature intended to preclude multiple punishments under § 2705, that section would read: "a

555 A.2d 1228 (1989). *See Id.*, 521 Pa. at 366, 555 A.2d 1234 (Papadakos, J., concurring and dissenting). However, the Court recently cited *Commonwealth v. Frisbie* with approval in *Commonwealth v. DeSumma*, —— Pa. ——, 559 A.2d 521 (1989). We conclude that *Commonwealth v. Frisbie* has not been overruled.

person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place *another person or persons* in danger of death or serious bodily injury."

Our conclusion is also supported by the general purposes of the Crimes Code. 18 Pa.C.S.A. § 104. Among those purposes are that of insuring that punishment is proportionate with criminal liability, 18 Pa.C.S.A. § 104(3), and that of differentiating among offenders based on the seriousness of their offenses, 18 Pa.C.S.A. § 104(5). An offender whose unlawful act harms or is likely to harm many people is more culpable, and thus deserving of more severe punishment, than an offender whose unlawful act harms only one person.

506 Pa. at 464–68, 485 A.2d at 1100–01. *Cf. Commonwealth v. DeSumma, supra* at n. 4 (each act of placing another in fear of imminent serious bodily injury constitutes separate assault under simple assault statute); *Commonwealth v. Zaengle,* 345 Pa.Super. 124, 497 A.2d 1335 (1985) (each act of unintentionally causing death of another while violating a law applying to the use of motor vehicles constitutes a separate offense under the homicide by vehicle statute).

*Frisbie* indicates that by defining the crime of robbery as threatening another during the course of a theft, the legislature intended to permit separate punishments for threatening more than one person. If the legislature had intended to preclude multiple punishments, it could have defined robbery as threatening *another person or persons* during the course of a theft. Just as appellant could have been convicted of two counts of recklessly endangering another person by waving a gun at both Ms. Cavaliere and Ms. DeJesse, he may be convicted of two counts of robbery for threatening to harm both Ms. Cavaliere and Ms. DeJesse while stealing from the Financial Exchange.

■ In arguing for the opposite conclusion, appellant cites *Commonwealth v. Lockhart,* 223 Pa.Super. 60, 296 A.2d 883 (1972). His reliance on that case is misplaced. In

*Lockhart,* the defendant forced the victim to hand over both $800 of his own money as well as additional funds belonging to his employer. The Superior Court held that a defendant commits only one robbery if he takes property belonging to different owners from the same person at the same time. As the appellant notes, the *Lockhart* case states that "a separate robbery may be found to have occurred each time another individual is put in fear, and from whom goods or money is taken." 223 Pa.Super. at 62, 296 A.2d at 884. From this, appellant would conclude that separate robberies *cannot* be found to have occurred *unless* more than one individual is put in fear and goods or money are taken directly from each of those individuals. *Lockhart* does not stand for this principle. Instead, *Lockhart* is consistent with the view that the number of robberies that results from a single course of conduct depends upon the number of persons who have been threatened with physical harm. We conclude that where only one person is threatened, only one robbery occurs even if the defendant makes off with goods that belong to two owners. However, where more than one person is threatened, more than one robbery may occur even if the defendant makes off with goods that belong to only one owner.

We further note that *Lockhart* was decided under the common law of robbery and before the adoption of section 3701 of the Pennsylvania Crimes Code. Section 3701, the current robbery statute, was derived from the Model Penal Code. The commentary to the Model Penal Code states that "[t]he primary concern [of the robbery provision] is with the physical danger or threat of danger to the citizen rather than with the property aspects of the crime." Model Penal Code and Commentaries § 222.1 commentary at 100 (Official Draft and Revised Comments 1985) (footnote omitted). This language tends to undermine appellant's theory that he is guilty of only one robbery because all of the cash and food stamps that he took were owned by the Financial Exchange. The purpose of the robbery statute was not exclusively to protect the property interests of institutions such as the Financial Exchange. Section 3701 was primari-

ly intended to protect people such as Ms. Cavaliere and Ms. DeJesse by deterring threats against workers who are under a duty to safeguard the financial reserves of their employers.

We are aware that in other jurisdictions, courts have significantly limited criminal liability for multiple counts of robbery. In several states, if a defendant commits a theft from a business enterprise, he can be found guilty of only one robbery regardless of how many people he has forced to hand over the assets of the enterprise. *See, e.g., State v. Collins*, 329 S.E.2d 839 (W.Va.1984) (collecting cases); *State v. Faatea*, 65 Haw. 156, 648 P.2d 197 (1982). In other states, the number of robberies for which the defendant may be prosecuted depends upon the number of people from whose possession property has been taken separately by force or intimidation. *See, e.g., Jordan v. Commonwealth*, 2 Va.App. 590, 347 S.E.2d 152 (1986) (collecting cases). These authorities do not control our interpretation of the Pennsylvania Crimes Code. Moreover, we note that our interpretation of Pennsylvania law is in accord with the decision of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Levia*, 385 Mass. 345, 431 N.E.2d 928 (1982). The *Levia* opinion states:

> So long as the victim of the assault has some protective concern with respect to the property taken from his person or presence, then the defendant may be convicted and sentenced for a separate and distinct robbery as to that person. If the indictments or counts for the robbery of numerous persons are unreasonably multiplied, the judge, in superintending the course of trial and in passing sentence, will act accordingly to prevent oppression.

385 Mass. at 350–351, 431 N.E.2d at 931 (citations omitted).[5]

In the instant case, both Ms. Cavaliere and Ms. DeJesse were employees of the Financial Exchange and both had a

5. Appellant has not argued on appeal that the trial court failed to prevent oppression when it imposed consecutive sentences. Moreover, such a claim would be without merit. At the sentencing hearing, the court noted that the defendant had committed six prior robberies and that the holdup of the Financial Exchange had a

protective concern for the property of the Financial Exchange. We need not decide whether appellant could be convicted of multiple robberies if he had threatened several bystanders who had no connection with the owner of the stolen property. We hold that where a defendant threatens to inflict serious bodily injury on two employees in order to effectuate a theft of property from their common employer, the defendant may be convicted of two counts of robbery.

■ We conclude that the evidence produced at appellant's trial was sufficient to sustain his conviction for two robberies. Trial counsel cannot be deemed ineffective for failing to assert a meritless claim. *Commonwealth v. Groff,* 378 Pa.Super. 353, 364–366, 548 A.2d 1237, 1243 (1988). Therefore, appellant was not deprived of the effective assistance of counsel by counsel's failure to seek an arrest of judgment on one of the robbery counts.[6]

## II.

■ Appellant next argues that counsel was ineffective for failing to contest the sufficiency of the evidence of the crime of former convict not to own firearm. Section 6105 of the Crimes Code provides, "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession

substantial psychological impact on both employees. In light of the broad discretion afforded the sentencing authority, we cannot say the decision to impose consecutive sentences was improper. Under other circumstances, such as where a first-time offender threatens numerous individuals during a single theft, lengthy consecutive sentences might arguably result in a punishment so excessive as to pose a substantial question as to whether the aggregate sentence was appropriate under the Sentencing Code. *See generally Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987).

6. Appellant's brief also contains a section in which he asserts that the trial court imposed an illegal sentence. This section simply incorporates by reference the argument that appellant committed only one robbery. We find that appellant was properly convicted of two counts of robbery, and we further conclude that his sentence on the robbery counts is not illegal. An act which injures multiple victims may serve as a basis for multiple sentences where the legislature intended that each injury would be punished as a separate offense. *See Commonwealth v. Frisbie,* 506 Pa. at 464–66, 485 A.2d at 1100.

or under his control." Section 6102 of the Crimes Code defines "firearm" as "[a]ny pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches." The barrel length specified by section 6102 is an essential element of the offense proscribed by section 6105. *Commonwealth v. Todd*, 477 Pa. 529, 384 A.2d 1215 (1978). Appellant contends that the judge that convicted him could not have found that this element had been established beyond a reasonable doubt. We do not agree.

The judge who heard evidence at appellant's July 14, 1986 bench trial on the firearm offense had previously presided over the April 22, 1986 robbery trial discussed in section I of this opinion. At the July 14, 1986 trial, appellant admitted that he was a former convict and he also stipulated as to all facts presented to the jury at the robbery trial. Thus, in determining the sufficiency of the evidence, we may consider all of the evidence adduced at the robbery trial. Moreover, we must view this evidence, and all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Ogin*, 373 Pa.Super. 116, 120–122, 540 A.2d 549, 552 (1988) (en banc).

At the robbery trial, Ms. Cavaliere testified that appellant initially concealed the weapon inside a manila envelope. She described the envelope as "about this high" and "not too wide". Although the record before us does not reveal the length of the envelope, the judge would have been able to estimate this length by observing Ms. Cavaliere's hand motions when she described the envelope as "about this high". The judge could then have concluded that the length of the gun barrel was less than the length of the envelope. In addition, the judge also heard Ms. DeJesse testify at the robbery trial that appellant's weapon was a *"small* black gun" (emphasis added).

In *Commonwealth v. Jennings*, 285 Pa.Super. 295, 427 A.2d 231 (1981), we found that counsel was not ineffective

for failing to seek an arrest of judgment following a conviction under section 6105 where the jury observed the gun in question and was properly instructed as to the statutory gun barrel length requirement. Under such circumstances, we presumed that the defendant's weapon had a barrel length of under 12 inches in the absence of any evidence to the contrary. Therefore, we reasoned that a challenge by counsel based upon barrel length would not have had arguable merit. This reasoning applies with equal force to the case sub judice. Although the finder of fact did not observe the gun itself, the finder of fact observed a witness who indicated the dimensions of the envelope in which the gun was contained. The finder of fact was a judge and as such is presumed to know the law. *See Commonwealth v. Hunter*, 554 A.2d 550, 558 (Pa.Super.1989). Moreover, none of the evidence of record indicates that the gun had an exceptionally long barrel length and appellant has never offered to come forward with any evidence which would show that the gun was not a firearm. We find that this sufficiency claim is without arguable merit and that the trial counsel was not ineffective for failing to argue this issue.

## III.

■ Appellant's remaining issues concern the identification testimony of Ms. Cavaliere and Ms. DeJesse at his robbery trial. Appellant claims that trial counsel was ineffective for failing to request a cautionary instruction regarding this testimony. Appellant also claims that the identification testimony should never have been admitted into evidence.

Viewed in the light most favorable to the Commonwealth as verdict winner, the facts relating to eyewitness identification are as follows. Ms. Cavaliere and Ms. DeJesse were robbed while inside the Financial Exchange office on September 18, 1985. The office is approximately twelve feet

across and eight feet wide and is illuminated by bright fluorescent lights. Both victims were in close proximity to the holdup man for about ten minutes.

In early October of 1985, a police officer met with both witnesses on separate occasions and showed them a photo array. All of the photos in the array were of young men. This array contained Commonwealth Exhibit C–1, a photograph of the appellant taken ten years before the crime. In this photograph, appellant is wearing an undershirt and is staring directly into the camera. Both witnesses picked Exhibit C–1 out of the array but each said that the holdup man looked older than in the picture.

A few weeks later, the police officer met with both of the witnesses on separate occasions and showed them a second photo array. All of the photos in this second array were of older men. This array contained Commonwealth Exhibit C–2, a photograph of the appellant taken about six months before the crime. In this photograph appellant is wearing a suit and tie, his head is tilted at an angle, and his eyes are downcast. Both witnesses failed to pick Exhibit C–2 out of the array.

A few weeks later, the police officer met with both of the witnesses on separate occasions and showed them a third photo array. This array contained Commonwealth Exhibit C–3, a photograph of the appellant that was taken within the past month. In this photograph, appellant is wearing a shirt and is staring directly into the camera. Both of the witnesses immediately identified Exhibit C–3 as a photograph of their assailant.

At trial each of the witnesses testified that she was absolutely sure that appellant was the man who had robbed her. Ms. Cavaliere emphasized that she recognized the appellant's eyes. Similarly, Ms. DeJesse stated, "His eyes would never change." Trial counsel attempted to impeach these identifications on cross-examination, but both witnesses were unshakable. The photographs of the appellant in

each of the arrays were moved into evidence and were examined by the jurors. These three photographs became part of the record filed on appeal with this court and have been examined by this court.

Appellant relies on *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), which states:

> [W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

378 Pa. at 424, 106 A.2d at 826. Appellant argues that the trial testimony of Ms. Cavaliere and Ms. DeJesse was weakened by their failure to select Exhibit C–2 from the second array. He therefore reasons that counsel was ineffective for not requesting a cautionary instruction under *Kloiber*.

The fact remains that the eyewitness testimony in this case was uncommonly strong. The two eyewitnesses had ample opportunity to observe appellant at close range during the robbery. Each of them independently identified him at the first photo array, at the third photo array, and at trial. Moreover, the failure to identify appellant's photograph from the second array may be readily explained. This photograph, which like the others is part of the record, looks substantially different from the other two and does not clearly show appellant's most notable feature—his eyes. The fact that the witnesses failed to spot appellant's photograph in the second array cannot reasonably be said to have weakened their prior and subsequent identifications to any significant degree. We find that under the facts of this case appellant was not entitled to a *Kloiber* charge. Accordingly, the allegation that counsel was ineffective for not requesting a *Kloiber* charge has no underlying merit.

■ Finally, appellant argues that the trial court erred by failing to suppress identification evidence. Suppression of identification evidence is required where the totality of the circumstances indicates that identification procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of a mistaken identification. *Commonwealth v. Monroe*, 373 Pa.Super. 618, 542 A.2d 113 (1988). Nothing in the instant case rises to this level.

Appellant primarily relies upon the fact that he was represented in each of the photo arrays that the witnesses examined. He notes that in *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976), a plurality of the Pennsylvania Supreme Court ordered the suppression of identification testimony where the complainant had seen the defendant's photograph in multiple photo arrays. *Fowler* is clearly distinguishable from the case sub judice. In *Fowler* the complainant had seen the defendant only momentarily at the time of the crime; here, both witnesses had an excellent opportunity to observe appellant during the holdup. In *Fowler*, the complainant admitted that she had been exposed to the defendant's photograph many times during numerous photo arrays; here, the witnesses viewed only three photo arrays. In *Fowler*, the defendant's photograph differed significantly from most of the other photographs in the arrays; the same cannot be said in this case. Furthermore, in the instant case, the witnesses viewed photographs that showed the appellant at different ages and in different poses. We do not interpret *Fowler* as establishing a per se rule that an identification is unreliable whenever a witness has observed a defendant's photograph in more than photo array. We find in this case that the trial court did not abuse its discretion by admitting the identification evidence.

Judgment of sentence affirmed.