574 A.2d 1078

COMMONWEALTH of Pennsylvania

v.

**Ronald RINK, Appellant.**

Superior Court of Pennsylvania.

Argued March 6, 1990.

Filed May 2, 1990.

**556**

Daniel M. Preminger, Philadelphia, for appellant.

Kathy Echteruacht, Asst. Dist. Atty., Philadelphia, for Com.

Before McEWEN, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We affirm.

Appellant, Ronald Rink, was convicted, after a jury trial, of one (1) count of criminal conspiracy,[1] one (1) count of simple assault,[2] two (2) counts of ethnic intimidation,[3] and two (2) counts of terroristic threats.[4] Post-trial motions were denied. Appellant was sentenced to consecutive sentences of one (1) to five (5) years on each of the two counts of ethnic intimidation and one (1) to five (5) years on criminal conspiracy. A petition for reconsideration of sentence was refused.

The events underlying appellant's conviction, as summarized by the trial court, are as follows. William and Mary Snow and their four children had been living at 4328 Waln Street in the lower Frankford section of the city for two (2) years. They were the only black family in the neighborhood.[5] On November 6, 1987, at about 10:00 P.M., Mr. Snow was driven home by his friend Al Bendzynski, a co-worker, with whom he intended to share the six pack of

1. 18 Pa.C.S.A. § 903.
2. *Id.* § 2701.
3. *Id.* § 2710.
4. *Id.* § 2706.
5. While the trial court makes reference to prior incidents of racism against the Snows, our review of the record does not reveal any testimony to support this characterization of the facts. Nonetheless, this misstatement of the Snow's experiences in the neighborhood does not effect our decision in this case.

beer he had brought home with him. There was a crowd of teenagers across the street in front of the Snow residence playing a radio loudly. Mr. Snow asked them to hold the noise down. Moments after entering his home, Mr. Snow heard a knock at the front door. The group of teenagers was now at his front steps. Believing his wife and children to be asleep upstairs, he shut the door behind him to confront the knocker. A two-by-four hit him at the thigh, knocking him off the step. Armed with sticks, the crowd of about sixteen or seventeen white youths then started to pummel him on the arms, head, and body. They threw objects at his home, breaking windows. Appellant was urging the group to "kill the nigger; get him."

When Mrs. Snow came to the door, her husband was on the ground surrounded by a group of young white males, wielding two-by-fours, some holding on to her husband, others tossing beer bottles at them and the house, cussing, yelling that they hated niggers, and "kill a couple of . . . niggers." Prominent in the group, holding a board and urging the group to "kill the niggers" was the appellant. The appellant punched Mrs. Snow and called her a "bitch" and "nigger." The crowd of youths disbursed as the police arrived on the scene. At the end of it all, Mr. Snow was bleeding, suffering from contusions of arms, legs, and body. The housefront was in shambles with both first and second floor windows shattered including the windows of the living room located six feet behind the porch windows.

Appellant raises the following five issues for our review: (1) whether the evidence was insufficient as to the offense of ethnic intimidation; (2) whether the evidence was insufficient as to the offense of criminal conspiracy; (3) whether the lower court erred in refusing to permit appellant to show that his alleged co-conspirators had been acquitted of the charges which arose out of the incident for which appellant was being tried; (4) whether the trial court erred by sentencing appellant on two charges of ethnic intimidation; and (5) whether trial counsel rendered ineffective assistance.

■  The standard by which we review a challenge to the sufficiency of the evidence is well established. The evidence must be viewed in the light most favorable to the Commonwealth as the verdict winner, and drawing all proper inferences favorable to the Commonwealth, determine if the jury could reasonably have concluded that all of the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989). In *Commonwealth v. Mudrick*, 510 Pa. 305, 507 A.2d 1212 (1986), our supreme court further stated that: "When reviewing the sufficiency of the evidence, an appellate court may not substitute its judgment for the jury's." *Id.* 510 Pa. at 307–08, 507 A.2d at 1213 (*quoting Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982) *cert. denied* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983)).

Ethnic intimidation is defined in 18 Pa.C.S.A. § 2710 as:

**(a) Offense defined.**—A person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, he commits an offense under any other provision of this article or under Chapter 33 (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) or under Section 3503 (relating to harassment by communication or address) with respect to one or more members of such group or to their property.

. . . . .

(c) Definition.—As used in this section "malicious intention" means the intention to commit any act, the commission of which is a necessary element of any offense referred to in subsection (a) motivated by hatred toward the race, color, religion or national origin of the individual or group of individuals.

Appellant alleges that the underlying incident was not motivated by hatred of the Snows' race, but was the result of Mr. Bendzynski tapping one of the teenagers on the cheek. Allegedly, when the co-workers arrived at Mr. Snow's home, Mr. Bendzynski engaged in a friendly discus-

sion about football with the group of teenagers. At the conclusion of the discussion and after a handshake, Mr. Bendzynski purportedly gave one of the teenagers a friendly pat on the cheek. Appellant contends that the teenager was offended by this action and went to Mr. Snow's house to seek an apology from Mr. Bendzynski.

While there is testimony to support appellant's theory, viewing the testimony in the light most favorable to the Commonwealth, we find overwhelming testimony that Mr. Snow, and not Mr. Bendzynski, suffered the consequences of the teenagers' actions. Not only were both Mr. and Mrs. Snow assaulted, but also their house was vandalized. Neither Mr. Bendzynski nor his car, which was sitting right outside the victims' home, was touched. Mr. Bendzynski even admitted at trial that the teenagers did not seem to want him, but were after Mr. Snow. Further, no ethnic slurs were hurled at Mr. Bendzynski, but rather the teenagers directed all of their aspersions at the Snows. We are not persuaded by appellant's rationalization that the ethnic epithets were not racially motivated but were the result of emotionally charged behavior. Finding no merit to appellant's arguments, we affirm the trial court's decision on this issue.

Appellant's second contention is that the evidence was insufficient as to the offense of criminal conspiracy. Appellant specifically contends that the evidence proffered established only his mere presence at the scene of the altercation. Our review of the record, however, reveals otherwise.

Under 18 Pa.C.S.A. § 903, criminal conspiracy is defined, in relevant part, as follows:

(a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Furthermore, we have explained:

[a]n explicit or formal agreement to commit crimes can seldom be proved and it need not be, for proof of a criminal partnership may be extracted from circumstances that surround the crime. A conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that criminal confederation has in fact been formed. It follows that shared criminal intent may likewise be proven circumstantially.

*Commonwealth v. Cruz Ortega*, 372 Pa.Super. 389, 393, 539 A.2d 849, 852 (1988) (citation and quotation marks omitted).

■ In the instant case, the record clearly supports the jury's imposition of guilt as to the criminal conspiracy offense. Appellant's contention that this was a spontaneous event at which he happened to be present, is belied by the record. Not only was appellant present with the group of teenagers, but he was actively involved in striking both Mr. and Mrs. Snow, in encouraging the continuation of the confrontation, and in shouting the racial epithets. Further, the testimony found credible by the jury was that several of the the teenagers, including appellant, were at the door already armed. Finding no merit to appellant's arguments, we affirm the decision of the trial court on this issue.

■ The third argument presented for our review is that the lower court erred in refusing to permit appellant to show that his alleged co-conspirators had been acquitted of the charges which arose out of the incident for which appellant was being tried. We initially note that admissibility of evidence is within the sound discretion of the trial court and appellate courts may reverse only upon a showing that the trial court abused its discretion. *Commonwealth*

*v. Wallace,* 522 Pa. 297, 561 A.2d 719 (1989). We find no such abuse of discretion in the instant case.

Appellant alleges that it was prejudicial error to admit evidence of the fact that the other teenagers with appellant were arrested.[6] To alleviate the prejudice, appellant claims that he should have been able to testify that his cohorts were acquitted of the charges which arose out of this incident. In support of his contention, appellant relies on our supreme court's decision in *Commonwealth v. Meredith,* 493 Pa. 1, 425 A.2d 334 (1981). Our examination of the record, however, discloses that appellant's reliance on the *Meredith* case is misplaced. As discussed more fully below, our supreme court's holding represents a narrow exception to the general rule that evidence of the verdict in a co-conspirator's case is inadmissible.

Along with four other individuals, the appellant in the *Meredith* case was arrested for murder. One of those individuals, Geraldine Stetler, was tried and acquitted prior to appellant's trial. During the course of appellant's trial, the Commonwealth repeatedly presented the details of Ms. Stetler's involvement. Ms. Stetler was called as a defense witness to support appellant's version of the events leading up to the decedent's demise. At the end of Ms. Stetler's testimony, appellant sought to disclose the fact that Ms. Stetler was acquitted in a separate trial of the same charges that the the defendant Meredith faced. The trial court refused appellant's request because it deemed this information irrelevant. Our supreme court reversed, stating that the Commonwealth's presentation of evidence impaired, if not destroyed the value of Ms. Stetler's testimony.

The facts in the instant case are easily distinguishable from the facts in the *Meredith* case. In the case presently before us, none of the other teenagers from the group were presented as defense witnesses. Their testimony was not

---

**6.** The Commonwealth asked appellant the following question on cross-examination:

Q: How many other persons other than you were arrested?

A: I believe maybe eight, seven, eight.

subject to impairment. Our supreme court in *Meredith* held that where there is evidence which tends to show that a defense witness is an accomplice, the defense may introduce evidence of the witness's acquittal, for the limited purpose of restoring the value of the defense witness's testimony. *Commonwealth v. Meredith, id.* 493 Pa. at 10, 425 A.2d at 339. These circumstances clearly do not exist in the instant case. Appellant was free to introduce the testimony of any one of his co-conspirators. If the Commonwealth had impeached that testimony by making reference to the fact that the particular witness was arrested along with appellant, then the defense could have introduced evidence of his acquittal to rehabilitate the witness's testimony. Since none of the co-conspirators testified on appellant's behalf in the instant case, we find no abuse of the trial court's discretion in not permitting this testimony.

In further support of our ruling, the trial court accurately points out that there were numerous references to the fact that there were other actors besides the appellant involved in the fracas. Finally, appellant was charged with conspiracy. The very nature of the offense of conspiracy infers that there were others arrested. Thus, the Commonwealth's limited reference to the others being arrested did not disclose anything that the jury did not already know. We find no prejudice to appellant as a result of passing reference to the fact that other teenagers were also arrested.

Appellant's fourth issue is that the trial court erred by sentencing him on two charges of ethnic intimidation. Initially, we note that appellant is questioning the legality of sentencing. The illegality of sentence cannot be waived and appellant's failure to raise this issue previously does not preclude our present consideration of it. *Commonwealth v. Mitchell*, 319 Pa.Super. 170, 465 A.2d 1284 (1983), corrected at 483 A.2d 1389 (1983).

A legality issue is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it

handed down. A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes. *Commonwealth v. Smicklo,* 375 Pa.Super. 448, 453, 544 A.2d 1005, 1008 (1988) *(en banc) quoting, Commonwealth v. Smith,* 375 Pa.Super. 419, 426, 544 A.2d 991, 994 (1988) *(en banc ).* Because the statute is penal in nature, it must be strictly construed. *Commonwealth v. Wooten,* 519 Pa. 45, 545 A.2d 876 (1988); Statutory Construction Act, 1 Pa.C.S.A. § 1928(b)(1).

In support of his argument that his sentence is illegal, appellant relies on our supreme court's decision in *Commonwealth v. Frisbie,* 506 Pa. 461, 485 A.2d 1098 (1984).[7] In *Frisbie,* the Pennsylvania Supreme Court held that in resolving an issue of whether a single act which injures multiple victims can be the basis for multiple sentences, the task of the court is to determine whether the legislature intended that each injury would be punished as a separate offense. *Id.* 506 Pa. at 466, 485 A.2d at 1100.

Appellant, in the instant case, argues that even though there were two individuals that were the subject of the racial slurs, there was a single act. Reviewing the language of the crimes code, appellant asserts that the legislature intended to preclude multiple punishments since it is worded to include "individual or group of individuals." The Commonwealth, argues to the contrary that: (1) appellant is relying on dicta; and (2) the *Frisbie* case is distinguishable in that its facts involve a single act while in the case presently before us, appellant engaged in separate acts of

7. As Judge Beck stated in *Commonwealth v. Rozplochi,* 385 Pa.Super. 357, 363–64 n. 4, 561 A.2d 25, 28 n. 4 (1989):

Justice Papadakos has expressed the view that *Commonwealth v. Frisbie* may have been implicitly overruled by the Pennsylvania Supreme Court's decision in *Commonwealth v. Weakland,* [521] Pa. [353], 555 A.2d 1228 (1989). *See Id.* [521 Pa.] at [365], 555 A.2d [at] 1234 (Papadakos, J. concurring and dissenting). However, the Court recently cited *Commonwealth v. Frisbie* with approval in *Commonwealth v. DeSumma,* [522] Pa. [36], 559 A.2d 521 (Pa.1989). We conclude that *Commonwealth v. Frisbie* has not been overruled.

racial intimidation by shouting racial epithets at each of the Snows.

In resolving this issue, we initially note that appellant is not relying on dicta. *See Commonwealth v. DeSumma*, 522 Pa. 36, 559 A.2d 521 (1989) (applying the *Frisbie* rationale to determine that a charge of attempting to put one victim, the driver of a car, in fear of bodily injury is a different offense than a charge of attempting to put the driver and his four passengers in fear of bodily harm such that it was impermissible to allow the Commonwealth to amend the criminal complaint at trial to include the victims of assault who were not named in the original complaint); *Commonwealth v. Rozplochi*, 385 Pa.Super. 357, 561 A.2d 25 (1989) (applying the *Frisbie* rationale to determine whether a defendant commits multiple robberies if he threatens two people while attempting to steal the property of their common employer). Nonetheless, we agree with the Commonwealth that the facts of this case are distinguishable in that unlike the facts in *Frisbie*, the facts in the instant case do not involve a single act.

Appellant's first act involved urging the crowd of teenagers to "kill the nigger; get him" when Mr. Snow initially came out of his house. We find that on these facts and the other circumstances more fully set forth in the record, appellant engaged in ethnic intimidation as to Mr. Snow. There was no need for him to engage in any further activity to complete the offense of ethnic intimidation. However, rather than leaving the premises, appellant's engaged in a second act of ethnic intimidation. This occurred when Mrs. Snow came out of the house. Upon her appearance, appellant, *inter alia*, called Mrs. Snow a "nigger," was urging the crowd to "kill a couple of ... niggers," and was party to the crowd that was assaulting Mr. Snow. Thus, appellant engaged in two separate acts of ethnic intimidation. If both Mr. and Mrs. Snow had been present when appellant and the other hoodlums began their melee, we would be inclined to rule to the contrary. However,

under the circumstances of this case, we find that our supreme court's decision in *Frisbie* is not controlling.

█ Appellant's last issue is whether trial counsel was ineffective: (1) for failing to raise the issue of legality of sentencing; and (2) for failing to raise the argument now presented as to the trial court's refusal to allow appellant to introduce evidence of the prior acquittal of the other teenagers involved in the underlying acts. Claims of ineffectiveness of counsel are subject to a three part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. *Commonwealth v. Tavares*, 382 Pa.Super. 317, 321, 555 A.2d 199, 201 (1989) (*citing Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987)). The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. *Commonwealth v. Chin*, 373 Pa.Super. 163, 540 A.2d 573 (1988). Counsel will not be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Silo*, 509 Pa. 406, 502 A.2d 173, (1985); *Commonwealth v. Cook*, 383 Pa.Super. 615, 557 A.2d 421 (1989). We decline to address appellant's final issue. Appellant has not been prejudiced as to either claim of ineffectiveness. Since we found no merit to either of appellant's bases of ineffectiveness, trial counsel was not ineffective for raising a meritless argument. *Id.*

Judgment of sentence affirmed.