J-S35023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY BROWN | |
| Appellant | No. 724 EDA 2018 |

Appeal from the Judgment of Sentence October 27, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001633-2017

BEFORE: OLSON, J., STABILE, J., and STRASSBURGER, J.*

MEMORANDUM BY STABILE, J.:               **FILED AUGUST 27, 2019**

Appellant, Anthony Brown, appeals from his judgment of sentence of two to four years' imprisonment plus three years' probation for carrying firearms without a license, carrying firearms in public streets in Philadelphia and possession of an instrument of crime ("PIC").[1]  Appellant argues that (1) the evidence was insufficient to sustain his convictions on the two firearms convictions, (2) the verdicts on the firearms charges were against the weight of the evidence, and (3) the trial court erroneously admitted evidence of a prior incident in which Appellant choked a witness and stole her phone.  We affirm.

The trial court summarized the factual history of this case as follows:

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6106, 6108, and 907, respectively.

On December 26, 2016, at approximately 7:55 p.m., the Appellant picked up his girlfriend, Carol Marchetti, from work at the McDonald's on 120 Oregon Avenue. While leaving, Brown and Marchetti had an argument over the contents of Marchetti's cell phone. Brown took Marchetti's cell phone and placed his hands around her neck. Shortly thereafter, Marchetti left the McDonald's and walked towards her sister's home. The Appellant followed her. After arriving at her sister's house, Marchetti told her sister (Rita Brown) and her sister's husband (Jojuan Brown) what had happened and asked for bus fare to get to her mother's house. Marchetti's sister suggested that her next-door neighbor (Jeffrey Labarr) drive her instead of taking the bus. While waiting for Labarr, Marchetti saw the Appellant calling out for her to come home, but she eventually left with Labarr to go to her mother's. After arriving at her mother's residence on 80th Street and Lindbergh Boulevard, Marchetti went inside while Labarr stayed outside in his vehicle. Meanwhile, the Appellant pulled into the driveway in a white Nissan Altima behind Labarr's vehicle. Neither Labarr nor the Appellant got out of their vehicles to talk to one another. After a couple of minutes, Marchetti's brother (Michael) walked to the Appellant's driver's side window. Michael and the Appellant started arguing, and Michael punched the Appellant through the car window. The Appellant then got out of the car, and both men fought for ten to fifteen seconds before Labarr broke up the fight. After Labarr intervened, he and the Appellant then fought for another thirty seconds. When the fight ended, both men walked back to their respective vehicles.

As the Appellant walked away, he said to Labarr "I got you!" Labarr then drove to Marchetti's brother's residence where he saw Rita Brown, their sons, and Jojuan Brown outside waiting for him. Ten minutes later, Labarr saw the Appellant drive around the block in the same white Nissan Altima. At that point, Rita Brown called the police, who responded around 10:30 p.m. After the police left, the Appellant was seen driving around the 2300 block of Beulah Street. He eventually parked his car three houses from Labarr's residence. After the Appellant parked, Jojuan Brown approached the parked car with his hands raised and identified himself before requesting the Appellant to leave. While approaching the car from the rear, Jojuan saw the Appellant leaning toward the right as if he were removing an object from the glovebox. After he approached, Jojuan was able to see inside the Appellant's car because there was a street light in the vicinity of the vehicle. Jojuan initially noticed a "gleam of metal" in the

Appellant's right hand. He subsequently saw that the Appellant had a gun in his right hand (on the Appellant's lap). Jojuan described the gun as a black semiautomatic pistol. Jojuan and the Appellant conversed for two minutes. During this time, the Appellant waved around his left hand but kept the hand with the gun on his lap. After several minutes, the Appellant told Jojuan that he was going to "pop Jeff." The Appellant subsequently drove away from the scene with the firearm still in his lap.

On December 27, 2016, at approximately 5:10 a.m., the police located the white Nissan Altima at 500 Greenwood Street, Philadelphia. After acquiring a search warrant, the police recovered Carol Marchetti's cell phone from the car. No firearm was recovered.

Trial Court Opinion, 9/14/18, at 3-5. We further observe that Jojuan Brown referred to the weapon as a "handgun" and a "pistol." N.T., 9/5/17, at 99-100, 117.

Appellant was convicted of the foregoing offenses following a non-jury trial. On October 27, 2017, the trial court imposed concurrent terms of two to four years' imprisonment on the firearms charges and a consecutive term of three years' probation on the PIC charge. On November 2, 2017, Appellant filed timely post-sentence motions. On March 2, 2018, the post-sentence motions were denied by operation of law. On March 7, 2018, Appellant filed a notice of appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises four issues in this appeal:

1. Was the evidence insufficient to sustain a conviction for Firearms Not to be Carried Without a License?

2. Was the evidence insufficient to sustain a conviction for Carrying a Firearm in Public Streets of Philadelphia?

- 3 -

3. Were the verdicts for the Violation of the Uniform Firearm Act offenses against the weight of the evidence?

4. Did the trial court err by admitting evidence of a prior bad act alleging that [Appellant] choked a witness and stole her phone?

Appellant's Brief at 5.

In his first two arguments, which we review together, Appellant challenges the sufficiency of the evidence underlying his firearms convictions under 18 Pa.C.S.A. §§ 6106 and 6108. When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Crosley*, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the

fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

Section 6106 and Section 6108 are part of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6128.  Section 6106, entitled "Firearms Not To Be Carried Without A License," provides in pertinent part that, subject to exemptions not relevant here, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106(a)(1).

Section 6108, entitled "Carrying Firearms On Public Streets Or Public Property In Philadelphia," provides:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1) such person is licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

For purposes of both Sections 6106 and 6108, a firearm is defined as

> [a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches.  The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

Appellant posits four claims in support of his argument that there is insufficient evidence to convict him under Sections 6106 and 6108. We address each claim *seriatim*.

First, Appellant argues that the Commonwealth failed to prove that he possessed any firearm at all, because the police did not recover any gun from his person or his car. We disagree. The Commonwealth may establish possession of a firearm solely through the testimony of a witness who observes the defendant with a firearm, even when no firearm is recovered. "[T]he rationale for allowing such inferences is the ease with which the most objective proof—the weapon itself—may be discarded." **Commonwealth v. Bond**, 523 A.2d 768, 770 (Pa. Super. 1987); **see also Commonwealth v. Robinson**, 817 A.2d 1153, 1162 (Pa. Super. 2013) (evidence sufficient to establish possession of handgun under Section 6106 where victim "testified that all three attackers possessed handguns. This is all that is necessary. That no gun was found on Appellant a half hour or more after the robbery is not dispositive of the sufficiency of the evidence. Appellant could have easily discarded the gun immediately after the robbery had been effectuated"). Here, Brown testified that he saw Appellant holding a black semiautomatic handgun in his lap while sitting his car near Labarr's residence. N.T., 9/5/17, at 98-101. This was sufficient to establish the element of possession. **Robinson**, 817 A.2d at 1162.

Next, Appellant argues that there was no evidence that the firearm in Appellant's lap was operable. It is well-settled, however, that "[a] reasonable fact finder may . . . infer operability . . . from an object which looks like, feels like, sounds like or is like, a firearm . . . without direct proof of operability." *Commonwealth v. Layton*, 307 A.2d 843, 844 (Pa. 1973). As stated above, Brown testified that he observed Appellant in possession of a black semiautomatic handgun, an object that "look[ed] like" a firearm. *Id.* Moreover, Appellant threatened to "pop" Labarr. This was sufficient to establish the element of operability.

Third, Appellant maintains that the Commonwealth failed to present any evidence of the firearm's barrel length. We disagree. The Uniform Firearms Act defines a "firearm" as "[a]ny pistol or revolver with a barrel length less than 15 inches." 18 Pa.C.S.A. § 6102. Like operability, the length of the barrel may be proven by circumstantial evidence. *Commonwealth v. Jennings*, 427 A.2d 231, 235 (Pa. Super. 1981) (length of weapon can be determined from what an object "looks like, feels like, sounds like or is like"). For example, in *Commonwealth v. Rozplochi*, 561 A.2d 25 (Pa. Super. 1989), during a bench trial,

> [one eyewitness] testified that appellant initially concealed the weapon inside a manila envelope. She described the envelope as "about this high" and "not too wide". Although the record before us does not reveal the length of the envelope, the judge would have been able to estimate this length by observing [the eyewitness's] hand motions when she described the envelope as "about this high". The judge could then have concluded that the length of the gun barrel was less than the length of the envelope.

- 7 -

In addition, the judge also heard [a second eyewitness] testify at the robbery trial that appellant's weapon was a "small black gun" . . .

*Id.* at 31. We reasoned that the evidence satisfied the Uniform Firearms Act's definition of barrel length:

Although the finder of fact did not observe the gun itself, the finder of fact observed a witness who indicated the dimensions of the envelope in which the gun was contained. The finder of fact was a judge and as such is presumed to know the law. *See Commonwealth v. Hunter*, 554 A.2d 550, 558 (Pa. Super. 1989). Moreover, none of the evidence of record indicates that the gun had an exceptionally long barrel length and appellant has never offered to come forward with any evidence which would show that the gun was not a firearm.

*Id.* at 31-32.

Here, as in *Rozplochi*, the Commonwealth introduced sufficient circumstantial evidence of barrel length. The judge who presided over Appellant's bench trial did not observe the gun itself, because no gun was recovered from Appellant or his car. Brown, however, testified that he spoke with Appellant for two minutes while Appellant was sitting in his car. Appellant removed the gun from the glove compartment, a relatively small space. N.T., 9/5/17, at 98-99. He held it in one hand and placed it in his lap, evidence that it was not large. *Id.* at 100. Brown called the gun a "pistol" and a "handgun." *Id.* at 99-100, 117. There was no suggestion that the gun had an exceptionally long barrel length. This evidence, viewed in the light most favorable to the Commonwealth, was sufficient to establish that the barrel of the gun was less than fifteen inches long.

Finally, Appellant argues that the Commonwealth failed to introduce any evidence of non-licensure. To begin with, Appellant waived this argument by failing to assert in his Pa.R.A.P. 1925 statement of matters complained of on appeal that the Commonwealth failed to satisfy the element of non-licensure. **Commonwealth v. Brown**, 186 A.3d 985, 990 (Pa. Super. 2018) (to preserve challenge to sufficiency of evidence, appellant's Rule 1925(b) statement must state with specificity the element or elements upon which he alleges that evidence was insufficient). Furthermore, under Section 6108, the Commonwealth is not required to prove non-licensure. **Commonwealth v. Bigelow**, 399 A.2d 392, 394-96 (Pa. 1979). Instead, the defendant may submit evidence of licensure as a defense. **Id.** at 396. Thus, the Commonwealth's failure to present evidence of non-licensure does not preclude Appellant's conviction under Section 6108.

In his next argument, Appellant contends that his convictions for firearms violations were against the weight of the evidence. We disagree.

"To grant a new trial on the basis that the verdict is against the weight of the evidence, . . . the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Childs**, 63 A.3d 323, 327 (Pa. Super. 2013). "On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its

discretion in making its determination." ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. Super. 2013). The trial court heard Brown's testimony about the firearm and found it credible. Brown watched Appellant remove a gun from the glove compartment and hold it in his lap. Brown was standing right next to the open driver's side window while Appellant held the gun in his lap for two full minutes. Although it was nighttime, Brown and Appellant were under a streetlight. Appellant told Brown he would "pop" Labarr.

Appellant argues that one of Brown's statements at the preliminary hearing undermines his trial testimony:

> [Question]: Did you see the gun that [Appellant] had inside of the vehicle?
>
> [Brown]: No. I didn't really look because when he pulled up, he got the gun out of the glove compartment and I figured he would have put it back.

N.T., 9/5/17, at 113.

We do not find the verdict so contrary to the evidence as to shock our sense of justice and compel an award of a new trial. The trial court, as factfinder, had the right to believe all, part, or none of Brown's testimony, to make credibility determinations and to resolve conflicts in testimony. ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723-24 (Pa. Super. 2015). A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. ***Id.*** Here, the trial court heard Brown's testimony, weighed it against his preliminary hearing testimony, and decided to credit his trial

- 10 -

testimony that he saw Appellant in possession of a firearm. This decision was within the trial court's discretion and does not warrant relief.

In his final argument, Appellant argues that the trial court abused its discretion by admitting Carol Marchetti's testimony that Appellant gripped her neck and took her phone on the evening of December 26, 2016. We conclude that this evidence was admissible under the *res gestae* exception to Pa.R.E. 404(b).

We review the trial court's evidentiary rulings for abuse of discretion. ***Commonwealth v. Dillon***, 925 A.2d 131, 136 (Pa. 2007). Pennsylvania Rule of Evidence 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, other crimes or bad acts may be admitted for purposes other than character or propensity. Pa.R.E. 404(b)(2); ***Dillon***, 925 A.2d at 137. One permissible reason to introduce evidence of prior bad acts is where the evidence is necessary to "complete the story" of the crime on trial, the so-called *res gestae* exception to the proscription against other crimes evidence. ***Id***. This exception is applicable in situations where the distinct crimes were part of a chain or sequence of events that formed the history of the case and were part of its natural development. ***Id.***

The events forming the basis of Appellant's convictions began when he fought with his girlfriend, Marchetti, grabbed her neck and took her phone.

Marchetti told her family members about the fight, and two of her family members encountered Appellant outside of Marchetti's mother's house and engaged in a fight. Labarr broke up the fight. In retaliation, Appellant drove to Labarr's house with a gun and told Brown he would "pop" Labarr. Because Appellant's altercation with his girlfriend formed the basis of the events that unfolded, the court properly admitted the evidence as part of the complete story of the crime. In addition, the trial court considered Appellant's objections to the evidence and explained that it would be able to consider the evidence for background without prejudicing Appellant. N.T., 9/5/17 at 22-23. The trial court acted within its discretion by admitting the evidence.

Appellant also argues that the Commonwealth did not provide notice of its intention to elicit the prior bad acts testimony. Rule 404(b)(3) provides that "the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excludes pretrial notice on good cause shown, of the general nature of any such [other bad acts] evidence the prosecutor intends to introduce at trial." Pa.R.E. 404(b)(3). "The purpose of this rule is to prevent unfair surprise, and to give the Appellant reasonable time to prepare an objection to, or ready a rebuttal for, such evidence. However, there is no requirement that the 'notice' must be formally given or be in writing in order for the evidence to be admissible." ***Commonwealth v. Lynch***, 57 A.3d 120, 125-26 (Pa. Super. 2012) (citation and quotations omitted). Where, for example, the Commonwealth provides information of prior bad acts within a

pre-trial affidavit of probable cause, the defendant will be deemed to have adequate notice of prior bad acts evidence. *Id.* at 126 (holding that notice was sufficient where prior bad act evidence was included in affidavit of probable cause and testimony at a prior hearing).

Here, Appellant had sufficient advance notice of the Commonwealth's intent to introduce Marchetti's testimony regarding their altercation. The affidavit of probable cause underlying the arrest warrant filed against Appellant on January 1, 2017 states that Marchetti told police that she "got off work at approx. 8:00 p.m. on 12-26-16 and got into an argument with [Appellant]. During the argument on 200 Oregon Ave . . . [Appellant] got out of his car, choked her against a fence, and took the cell phone from [her] jacket pocket." Affidavit of Probable Cause. Moreover, defense counsel objected to Marchetti's testimony before she gave it, evidencing that counsel expected she would testify about the prior acts. N.T., 9/5/17, at 20. Therefore, Appellant had prior notice of the testimony, was prepared to offer an objection to it, and suffered no unfair surprise when the Commonwealth sought to admit it.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/19