J-S47010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VERNON WAYNE KING | |
| Appellant | No. 1150 MDA 2019 |

Appeal from the Judgment of Sentence May 1, 2019
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0004017-2017

BEFORE:  STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED MARCH 26, 2021**

Appellant, Vernon Wayne King, appeals from his judgment of sentence of five to ten years' imprisonment for persons not to possess firearms (18 Pa.C.S.A. § 6105) and a consecutive term of five years' probation for carrying a firearm without a license (18 Pa.C.S.A. § 6106).  Appellant argues (1) the evidence was insufficient to sustain his conviction under Section 6106 for carrying a firearm without a license, and (2) the trial court's cautionary eyewitness jury instruction (the "***Kloiber***"[1] instruction) was defective.  We affirm.

The trial court summarized the evidence as follows:

On July 16, 2016, at approximately 3:25 a.m., officers from the City of Harrisburg Police Department responded to the area of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).

Crescent and Hunter Streets for a report of man shot and down in the street. Officer Matt Novchich (hereinafter "Officer Novchich") was the first to arrive on scene. As he arrived on scene, a person waved him down and pointed eastbound up the 1200 block of Hunter Street. He exited the vehicle and began running in that direction. Officer Novchich observed a male lying on the north side of the street between a house and a "cut" (presumably alleyway between two houses). He made contact with the victim and observed blood trickling from the head area—there were no signs of life at that time. The victim, Frankie Whitlock, was pronounced dead at 3:31 a.m.

Detective Jason Paul was assigned to this case and arrived on scene at approximately 4:30 a.m. While on scene, he was provided the name of Corin Blackwell (hereinafter "Corin") as a potential witness. He tried to contact her but was unsuccessful and was informed that Corin and her sister had immediately left after the shooting. Detective Paul subsequently learned that Corin was sending someone to pick up her children (who were still in the area with a babysitter) and if he followed the children, he would find Corin. Ultimately, Corin was brought into the police station and questioned. She provided several different stories to police, and she was eventually arrested for hindering apprehension. Corin was questioned at least two (2) additional times and provided a statement each time. Detective Paul also questioned Corin's sister, Talya Blackwell Young (hereinafter "Talya"), about any information she may have regarding the homicide.

At trial, both Talya and Corin testified. In the early morning of July 16, 2016, Talya received a phone call from Corin saying that she was spit on and that she was located at Wiconisco Street in the City of Harrisburg. Talya took a cab back to her residence at 1112 Hunter Street, and while on the way, called the victim to meet her at the house in case the guy who spit on Corin showed up because she wanted Frankie to fight him for her. When Talya arrived at her residence, Corin, Frankie, and others were already there hanging out on the porch. After approximately twenty (20) minutes, Frankie left because the person who spit on Corin was not there, and [he] told Talya to call if he show[ed] up.

Shortly after, one of the males that Corin was with earlier in the night (presumably when the spit[ting] incident happened) showed up [at] the house. Corin began arguing with the male who she

later identified as [Appellant]. While the two were arguing, Talya testified that [Appellant] displayed a firearm. Corin also testified that [Appellant] was holding a firearm in his hand while he was arguing with her.[2] Talya then identified [Appellant] in the courtroom as the person who she observed displaying a firearm. Talya provided police a statement on July 21, 2016. In her statement, she described the clothing that [Appellant] was wearing on the night of the homicide. In addition to making the statement, Talya was shown two (2) photo arrays—in one she identified [Appellant] as the person she saw with a firearm on July 16, 2016. At trial, Talya testified that she was certain that the person she identified in [the] courtroom ([Appellant]) was the same person she saw on July 16, 2016 displaying a firearm.

Trial Court Opinion, 11/25/20, at 3-5 (citations to trial transcript omitted).

Talya testified that when Appellant arrived at her house, she texted Frankie Whitlock and advised that Appellant and another male involved in the spitting incident had arrived at the scene. T.T. at 154. Frankie came to the scene and was shot and killed. *Id.* at 155-56.

On July 22, 2019, both Appellant and co-defendant Kurt Tasker were charged with, *inter alia*, murder, conspiracy to commit murder, carrying firearms without a license and persons not to possess firearms. The charge of persons not to possess firearms was severed from the other charges against both defendants, and both defendants waived their right to a jury trial on this charge. Following a five-day trial, the jury acquitted Appellant of murder and

---

[2] Appellant claims incorrectly that Talya was the only witness who testified that Appellant was carrying a firearm. In fact, Corin testified that she saw Appellant fire his gun (Trial Transcript ("T.T.") at 324) and that Appellant was "in my face, arguin' with me, with a gun in his hand." *Id.* at 325.

conspiracy but found him guilty of carrying a firearm without a license. The jury acquitted Tasker on all counts presented to them, including carrying firearms without a license.

After excusing the jury, the trial court turned to the charge of persons not to possess firearms against both defendants. The court stated, "I have no desire to contradict the jury on the issue of possession." T.T. at 1124. As to Tasker, the court stated, "I'm finding that the jury had problems accepting beyond a reasonable doubt that you possessed a firearm at all, so I will find you not guilty on the count of [persons not to possess] firearms . . ." *Id.* at 1125. As to Appellant, the court stated, "I add what's there to the finding of the jury that I agree on the count of firearms not to be carried and find you guilty of persons not to possess." *Id.*

Following sentencing, Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. On July 22, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925 statement of matters complained of on appeal within 21 days. On August 16, 2019, five days beyond the 21-day deadline, Appellant filed his statement of matters complained of on appeal.

On September 3, 2019, the trial court filed a Statement In Lieu Of Rule 1925(a) Opinion contending that Appellant waived all issues on appeal by failing to pay for the transcript of trial proceedings. The record reflects, however, that the transcripts were filed with the clerk of the trial court in July

2020. Accordingly, on October 29, 2020, this Court ordered the trial court to file a Pa.R.A.P. 1925(a) opinion. On November 25, 2020, the court filed a Pa.R.A.P. 1925 opinion addressing the issues raised in Appellant's statement of matters complained of on appeal.[3]

Appellant raises two issues in this appeal:

1. Is there insufficient evidence for the firearms charges[4] where the government has failed to meet its burden on all of the elements of the crime?

2. Did the court improperly instruct the jury as to **Kloiber** both as a whole and with its commentary?

Appellant's Brief at 6.

Appellant first contends that the evidence is insufficient to sustain his conviction for carrying firearms without a license because the Commonwealth failed to prove that the firearm he displayed was a pistol whose barrel length was less than 15 inches. We disagree.

_____

[3] The trial court observed in its opinion that Appellant filed his Pa.R.A.P. 1925(b) statement of matters complained of on appeal on August 16, 2019, five days after the court-ordered deadline. Rule 1925 prescribes that when the defendant "files an untimely [statement of matters complained of on appeal,] such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion," the Superior Court may remand for appointment of new counsel, the filing of a statement of matters complained of on appeal *nunc pro tunc*, and the preparation and filing of an opinion by the judge. Pa.R.A.P. 1925(c)(3). Although we do not approve of Appellant's tardiness, we do not find remand necessary because the trial court has filed a Rule 1925 opinion.

[4] Although this question refers to both firearms charges, the argument section of Appellant's brief only challenges the sufficiency of the evidence underlying his conviction for carrying firearms without a license.

As this Court has explained:

Our standard of review regarding challenges to the sufficiency of the Commonwealth's case is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, [95 A.3d 277 (Pa. 2014)]. As an appellate court, we must review "the entire record . . . and all evidence actually received[.]" *Id.* "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Kearney*, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted).

*Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014).

To prove the crime of carrying firearms without a license, the Commonwealth must prove beyond a reasonable doubt that an individual: (1) carried a firearm (2) in a vehicle or concealed on his person, except his place of abode or fixed place of business and (3) without a valid and lawfully issued license. 18 Pa.C.S.A. § 6106(a)(1). The Crimes Code defines "firearm" as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less

than 16 inches, or any pistol, revolver, rifle, or shotgun with an overall length of less than 26 inches." 18 Pa.C.S.A. § 6102.

Relying on *Commonwealth v. Todd*, 384 A.2d 1215 (Pa. 1978), Appellant argues that the evidence is insufficient to sustain his conviction under Section 6106 because the Commonwealth failed to present evidence of his firearm's barrel length. This argument fails because, like operability, the length of the barrel may be proven by circumstantial evidence. *Commonwealth v. Jennings*, 427 A.2d 231, 235 (Pa. Super. 1981) (length of weapon can be determined from what object "looks like, feels like, sounds like or is like"). For example, in *Commonwealth v. Rozplochi*, 561 A.2d 25 (Pa. Super. 1989), during a bench trial,

> [one eyewitness] testified that appellant initially concealed the weapon inside a manila envelope. She described the envelope as "about this high" and "not too wide." Although the record before us does not reveal the length of the envelope, the judge would have been able to estimate this length by observing [the eyewitness's] hand motions when she described the envelope as "about this high." The judge could then have concluded that the length of the gun barrel was less than the length of the envelope. In addition, the judge also heard [a second eyewitness] testify at the robbery trial that appellant's weapon was a "small black gun."

*Id.* at 31. We reasoned that the evidence satisfied the Uniform Firearms Act's definition of barrel length.

> Although the finder of fact did not observe the gun itself, the finder of fact observed a witness who indicated the dimensions of the envelope in which the gun was contained. The finder of fact was a judge and as such is presumed to know the law. *See Commonwealth v. Hunter*, 554 A.2d 550, 558 (Pa. Super. 1989). Moreover, none of the evidence of record indicates that the gun had an exceptionally long barrel length and appellant has

never offered to come forward with any evidence which would show that the gun was not a firearm.

*Id.* at 31-32.

Here, as in ***Rozplochi***, the Commonwealth introduced sufficient circumstantial evidence of barrel length. The trial court observed:

Corin and Talya testified that Appellant was holding the firearm in one hand. Specifically, Talya testified that "[Appellant] showed it" and that it came from "on his person." ([T.T.] at 154). Corin testified that "[Appellant's] in my face, arguin' with me with a gun in his hand." (***Id.*** at 325). Additionally, the Commonwealth presented evidence from Dr. Wayne Ross (hereinafter "Dr. Ross"), Dauphin County Coroner, that the victim suffered from a through-and-through fatal gunshot wound. ([***Id.***] at 536). Therefore, no bullet was recovered. (***Id.***) However, Dr. Ross testified that the entry and exit wounds on the victim were consistent with being shot by a nine-millimeter projectile. (***Id.***)

Further, the Commonwealth presented evidence from Corporal Nicholas Scianna (hereinafter "Corporal Scianna"), a firearm and toolmark expert employed by the Pennsylvania State Police. (***Id.*** at 555-56). Corporal Scianna testified that the eleven nine-millimeter Luger cartridge cases collected from the scene were all discharged from the same unknown firearm. ([***Id.***] at 571). He opined that they were fired through a recoil-operated firearm where the barrel tils [*sic*]. (***Id.***) . . .

Based on the testimony of the eyewitnesses that Appellant was holding the firearm with one hand seemingly waving it around, coupled with Trooper Scianna's characterization of the firearm as a "pistol" [***Id.*** at 571], and absent any evidence of an exceptionally long barrel length, a fact-finder could infer that the firearm's barrel length met the definition set forth in Section 6102.

Trial Court Opinion, 11/25/20, at 9-10 (footnote omitted).

We agree with the trial court's reasoning and find that this evidence, construed in the light most favorable to the Commonwealth, was sufficient to prove the barrel length element of the crime of carrying a firearm without a

license.  **See also Commonwealth v. Brown**, 2019 WL 4034023, \*3-4 (Pa. Super., Aug. 27, 2019) (memorandum)[5] (following **Rozplochi** and finding circumstantial evidence of barrel length sufficient to sustain conviction for carrying firearm without license).

Next, Appellant argues that the trial court failed to give an adequate **Kloiber** instruction concerning the reliability of Talya's identification testimony.  We find no merit to this argument and conclude in any event that a **Kloiber** instruction was unnecessary.

The fateful altercation took place in front of Talya's house on Hunter Street in the early morning hours of July 16, 2016.  As Talya was standing on the sidewalk in front of her house, she observed Appellant arguing with Corin in the street near the sidewalk.  T.T. at 153-54.  Talya testified that Appellant "showed a gun," **id.** at 153, and that a gun was "on his body.  It was on his person."  **Id.** at 154.  The lighting on the street was "relatively poor," although there was a streetlight near where Frankie was shot.  **Id.** at 415, 708.  Talya testified that she was nearsighted and did not remember if she had her glasses on that night.  **Id.** at 276.  Talya also testified that she observed a silver Buick drive by near the time of the fatal altercation.  **Id.** at 149-51.  During cross-examination, Talya clarified that she saw the silver Buick driving on two nearby cross streets, Hummel and Crescent Streets.  **Id.** at 277.  She also

---

[5] The Rules of Appellate Procedure permit us to cite a memorandum decision filed after May 1, 2019 for its persuasive value.  Pa.R.A.P. 126(b).

admitted that when police officials asked her prior to trial whether the Buick was decent and had nice rims, she answered, "I'm nearsighted. I couldn't tell if the rims were good." *Id.* at 277-78.

Not only did Talya observe a gun in Appellant's hand during the incident, but Corin did as well. Corin testified that she saw Appellant fire his gun, T.T. 324, and that Appellant was "in my face, arguin' with me, with a gun in his hand." *Id.* at 325.

Counsel for Appellant requested the trial court to give a *Kloiber* instruction to the jury "about identification . . . with regards to the testimony of Talya," *id.* at 944, without further explaining why Talya's testimony warranted a *Kloiber* charge. The following day, counsel requested the court to give the *Kloiber* charge provided in section 4.07B of Pennsylvania's Suggested Standard Jury Instructions for criminal trials. *Id.* at 953-54. The court replied, "I already have my own alternative in mind." *Id.* at 954.[6]

Pennsylvania's Suggested Standard Jury Instructions provide the following *Kloiber* instruction:

4.07B - IDENTIFICATION TESTIMONY--ACCURACY IN DOUBT

1. In [his] [her] testimony, [name of witness] has identified the defendant as the person who committed the crime. There is a question of whether this identification is accurate.

---

[6] The court noted that Appellant's objection to the wording of the *Kloiber* instruction was preserved for appeal, stating, "[Y]ou've already preserved the issue at this point because you have an exception on the record." *Id.*

2. A victim or other witness can sometimes make a mistake when trying to identify the criminal.  If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution.  Identification testimony must be received with caution [if the witness because of bad position, poor lighting, or other reasons did not have a good opportunity to observe the criminal] [if the witness in [his] [her] testimony is not positive as to identity] [if the witness's positive testimony as to identity is weakened [by qualifications, hedging, or inconsistencies in the rest of [his] [her] testimony] [by [his] [her] not identifying the defendant, or identifying someone else, as the criminal [at a lineup] [when shown photographs] [give specifics] before the trial] ] [if, before the trial, the defendant's request for a [lineup] [specify request] to test the ability of the witness to make an identification was denied and the witness subsequently made a less reliable identification] [if, [give specifics] ].

[First Alternative: Court rules as a matter of law that caution is required:]

3. In this case [there was evidence that [name of witness] could not see the criminal clearly] [give specifics].  Therefore, you must consider with caution [his] [her] testimony identifying the defendant as the person who committed the crime.

[Second Alternative: When there is a jury issue as to whether caution is required:]

3. If you believe that [this factor is] [one or more of these factors are] present, then you must consider with caution [name of witness]'s testimony identifying the defendant as the person who committed the crime.  If, however, you do not believe that [this factor] [at least one of these factors] is present, then you need not receive the testimony with caution; you may treat it like any other testimony.

4. You should consider all evidence relevant to the question of who committed the crime, including the testimony of [name of victim or witness], [any evidence of facts and circumstances from which identity, or non-identity, of the criminal may be inferred] [give other circumstances].  You cannot find the defendant guilty unless you are satisfied beyond reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed but that it was the defendant who committed it.

Pa.S.S.J.I. (Crim.) 4.07B.

The trial court gave the following instruction to the jury:

So in deciding this credibility, good example I like to use—and I know football season has ended, but I still like it because it has a lot of different things we can all identify and then understand the principles that's involved . . . So we have a bunch of people that are actively rooting for one of the teams. And you can probably tell that by people in the crowd wearing colors that correspond with their team's uniforms perhaps. So it's a tight game, it's very intense, and there's an important play that happens on the sideline. The question becomes, did the receiver actually catch the pass and have control and both feet in before going out of bounds? So the play goes down. The ref makes the call, calls it out of bounds, and half the crowd goes wild cheering and the other half starts booing, hissing and calling into question the parentage of the referee. Now, everybody in that stadium saw the exact same play. Why would there be such a difference in their reaction? . . . That's human nature. It happens all the time. Not everybody can be objective at all times. They might have an interest, so that can sometimes cloud their recollection. Certainly cloud what they testify to. Well, obviously, you're human beings. You recognize it. You take that into consideration . . . Now, the referee, his uniform doesn't correspond with one team or the other. You would expect him to make an objective call. He shouldn't have any bias in the case. But he makes his call, and then they do the reverse angle, slow motion replay, and, sure enough, even though the player kind of had his back to the ref in question, from the other angle they can, indeed, see the ball coming in, tucked, controlled, and when they stop the camera, both toes are inside the bounds before he goes out, and they reverse the call. Did the ref get it wrong because he was biased? He wanted to get it wrong? Or was he simply not in the best position to observe? Did it happen too fast? Was he partially blocked? That's similar to cases where witnesses testify. Do they have enough lighting? Do they have enough opportunity to make that observation? And, again, that's why you look to those factors in deciding who to believe, what to believe, how much to believe, and how much weight to give that testimony.

. . . .

Remember, I told you it's a collaborative process of making sure I address the law as it's been requested to be covered. Some of the evidence—and I think I've kind of covered it in my general instruction dealing with the football game and witness credibility determination. The courts have been dealing with issues where they try to address the reliability of identification evidence, and the key is, in cases where someone is never seen or heard or knows anyone from prior occasions, in a split moment, they can make an identification later in court that can call into question. So you have to go into, did they have the ability to see? Again, you've heard all the testimony. I'm not going to argue them one way or the other as to what lighting or absence of lighting was there. Whether there was an opportunity to see the person or persons long enough to make the identification; and, third, that they're in a position to accurately describe or demonstrate the reliability of that. And the reason we take that is, in cases that rely solely on eyewitness identification opinion, that is where you have the highest risk of misidentification. But when you decide those things, you also look at other things that indicate identity. So identity can be proven directly by a witness, or, in cases where there's other stuff, it can be proven circumstantially. Whether that's . . . establishing through other witnesses where people might have been before, during, or after; as well as whether that's cell phone records, whether there are statements. All those factors enter into it. But I didn't want you to think that—simply because someone comes in and says, I'm 100 percent certain that's the person, you're not bound by the conclusion of 100 percent. Now, you may be, but you're not bound. You have to use that common understanding of how that all works. Again, you view all the evidence in deciding who you believe, how much to believe, and how much weight to give the testimony in that case.

T.T. at 1071-73, 1090-92.

Counsel objected to the court's charge, arguing that the court should have specifically instructed the jury to "take that identification with caution."

*Id.* at 1098. The court replied,

I think I probably in the eyes of the Commonwealth went way past where I should have gone with my attacking the veracity of an eyewitness. But I think it's really consistent with the case law as I've been reading it from the Supreme Court that eyewitnesses

- 13 -

are suspect, but I don't think it meets the threshold with the case law that you gave me.

*Id.*

Appellant argues that the trial court erred by failing to give a ***Kloiber*** charge to the jury specifying that Talya was nearsighted and did not remember wearing her glasses at the time of the incident. "When reviewing a challenge to a jury instruction, we review the charge as a whole to ensure it was a fair and complete statement of the law. Trial courts possess great discretion in phrasing jury instructions so long as the law is clearly, adequately, and accurately presented to the jury." ***Commonwealth v. Towles***, 106 A.3d 591, 607 (Pa. 2014). "A trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law." ***Id.*** The trial court has the discretion to use its own language in charging the jury instead of Pennsylvania's Suggested Standard Jury Instructions. "The Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." ***Commonwealth v. Eichinger***, 108 A.3d 821, 845 (Pa. 2014). "A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury." ***Commonwealth v. Fletcher***, 986 A.2d 759, 792 (Pa. 2009).

In ***Kloiber***, our Supreme Court held as follows:

> [W]here the witness is not in a position to clearly observe the assailant or he is not positive as to identity, or his positive statements as to identity are weakened by qualification, or by the failure to identify the defendant on one or more prior occasions, the accuracy of the identifications is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826-27.  However, "[w]here the opportunity for positive identification is good and the witness'[s] identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution."  *Id.* at 826.  The Court clarified in *Commonwealth v. Ali*, 10 A.3d 282 (Pa. 2010), that a defendant is entitled to a *Kloiber* instruction only when a witness "(1) was not in a position to clearly observe the defendant, or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions."  *Id.*

"The need for a *Kloiber* charge focuses on the *ability* of a witness to identify the defendant."  *Commonwealth v. Reid*, 99 A.3d 427, 449 (Pa. 2014) (emphasis in original).  "The *Kloiber* charge alerts the jury where a witness might be physically incapable of making a reliable observation.  This inquiry is distinct from the credibility determination a fact-finder must make."  *Commonwealth v. Collins*, 70 A.3d 1245, 1255 (Pa. Super. 2013).  For example, a *Kloiber* charge is necessary when the witness is legally blind, *Commonwealth v. Jones*, 954 A.2d 1194, 1198-99 (Pa. Super. 2008), but

- 15 -

is not necessary when the witness's credibility is in question due to intoxication or fear of reprisal. **Reid**, 99 A.3d at 449-50.

Courts have held in multiple cases that a **Kloiber** charge was not required because the witness was in a position to clearly observe the defendant, was positive as to the defendant's identify, and never failed to identify the defendant on another occasion. **See**, **e.g.**, **Commonwealth v. Shaw**, 214 A.3d 283, 290-91 (Pa. Super. 2019) ("[n]one of the factors warranting a **Kloiber** charge were present in this case [because the v]ictim had three opportunities to view Appellant before and during the assault, and he never equivocated in his identification before or during the trial").

In the present case, Talya was in a position to clearly observe Appellant, and she unequivocally identified Appellant as both present at the scene of the shooting and in possession of a firearm. Thus, a **Kloiber** charge was unnecessary. Although Talya admitted that her nearsightedness and failure to wear glasses prevented her from identifying features of a silver Buick driving down nearby cross streets with specificity, **Kloiber** only applies when the witness might be physically incapable of identifying the **defendant**, not other objects such as automobiles. In any event, the record provides a logical explanation why Talya was able to identify Appellant but not the features of the Buick. Talya stood mere feet from Corin as Appellant was waving his gun, whereas the Buick was driving on cross streets, farther away from where Talya stood.

We further have no concerns about the instructions that the court gave the jury instead of the standard **Kloiber** charge. The court warned the jury not to take eyewitness identification testimony at face value, even when the witness was absolutely certain of her identification, but should instead take all surrounding circumstances into account in order to determine how much weight to give this testimony. T.T. 1071-73, 1090-92. These instructions did not harm Appellant's defense; they benefited him by directing the jury to scrutinize Talya's and Corin's testimony carefully.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/26/2021